J-S01045-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
TINA TEDESCO, :
:
Appellant : No. 2458 EDA 2019

Appeal from the PCRA Order Entered July 22, 2019
in the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0002229-2013

BEFORE: BOWES, J., KUNSELMAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.: **FILED AUGUST 28, 2020**

Tina Tedesco (Appellant) appeals from the July 22, 2019 order dismissing her petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

In 2013, Appellant and her husband, John Tedesco (John or her husband) (collectively, the Tedescos), were charged with various crimes for their role in the death of a dependent person in their care, Barbara Rabins. This Court summarized the basic facts of this case in Appellant's direct appeal as follows.

> [] Appellant and her husband had a relationship with [Rabins] for approximately twelve years preceding Rabins['s] August 18, 2011 death at the age of 70. Rabins was a mentally and physically disabled individual who was estranged from her out-of-state family and whose father established a trust fund for her before his death. Appellant and her husband received $2,000 per month from the trust for rent and incidental expenses as well as money from the trust to pay for their utility bills. In addition,

* Retired Senior Judge appointed to the Superior Court.

Appellant, as payee, received Rabins' $1,300 monthly social security checks. Also, Appellant and her husband were designated beneficiaries of [a] $100,000 life insurance policy insuring Rabins and identifying her as their aunt.

In 2010, Rabins suffered a stroke and was admitted to a rehabilitation facility. The Tedescos insisted that she be released to their care shortly thereafter and Rabins was discharged against medical advice. At the time of her discharge on July 14, 2010, Rabins weighed 219 pounds. At the time of her August 2011 death, which was caused by "hypernatremic dehydration with aspiration of food bolus," *i.e.*, dehydration with high sodium levels and choking (on a piece of cheese), Rabins weighed 116 pounds. An autopsy revealed that, at the time of her death, Rabins was wearing an adult disposable diaper that was wet with urine, feces and blood. She suffered from pressure ulcers on her chest, thighs, legs, feet, right elbow and forearm, back, lower back, buttocks and hand. Photographs taken at the autopsy showed that her arms and hands were dirty and covered in feces, with feces under her overgrown fingernails that were an inch to an inch and a half long on one hand. Ultimately, the doctor who conducted the autopsy announced that the manner of death was neglect of a care[-]dependent person, fitting the medical definition of homicide. As a result, the Pennsylvania State Police initiated an investigation into her death, including a search of the Tedescos' home. Appellant and her husband both voluntarily gave statements to the police.

The Tedescos contended that they cared for Rabins in their home[, where she was found dead by emergency personnel following a 911 call by the Tedescos], but evidence suggested that she was actually living in an apartment [on Route 115 in Saylorsburg] with a roommate, Tom Miller, who was hospitalized in a V.A. hospital beginning in March of 2011 and beyond Rabins' death. A search of the apartment revealed an apartment in a filthy condition that contained wheelchairs, walkers, and a blanket and couch that were soiled.

*Commonwealth v. Tedesco*, 168 A.3d 326 (Pa. Super. 2017) (unpublished

memorandum at 1-2) (titles removed).

- 2 -

Approximately two years after the death of Rabins, Appellant was charged with "third[-]degree murder, neglect of care-dependent person, theft by unlawful taking, theft by failing to make required disposition of funds received, and tampering with/fabricating physical evidence. With the exception of tampering with physical evidence, Appellant also was convicted of conspiracy to commit each of the enumerated crimes." *Id.* At the conclusion of a joint jury trial with her husband that began on August 5, 2015, and concluded on August 14, 2015, the jury found Appellant and her husband guilty of the charged crimes. On October 26, 2015, Appellant was sentenced to "an aggregate term of incarceration of not less than 183 months (15.25 years) and not more than 366 months (30.5 years)." *Id.* This Court affirmed Appellant's judgment of sentence on March 20, 2017. *See generally id.* Our Supreme Court denied Appellant's petition for allowance of appeal on September 19, 2017. *Id.*, *appeal denied*, 170 A.3d 1060 (Pa. 2017). Appellant did not seek further appellate review.

On May 14, 2018, Appellant timely filed *pro se* a PCRA petition. Following the appointment of counsel, Appellant filed an amended PCRA petition. Two hearings were held on March 4, 2019, and April 18, 2019. On July 22, 2019, the PCRA court denied Appellant's petition.

This timely-filed appeal followed.[1] On appeal, Appellant raises 11 issues, each contending that Appellant's trial and/or direct appeal counsel rendered ineffective assistance of counsel in various ways. Appellant's Brief at 4-6.

We are guided by the following standard of review in assessing Appellant's issues, some of which we address together for ease of disposition. On review of orders denying PCRA relief, our standard is to determine whether the PCRA court's ruling is free of legal error and supported by the record. *Commonwealth v. Orlando,* 156 A.3d 1274, 1280 (Pa. Super. 2017) (citation omitted). To prevail on a petition for PCRA relief, a petitioner must plead and prove, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2). These circumstances include ineffectiveness of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii).

"[C]ounsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary." *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018).

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA

---

[1] Both Appellant and the PCRA court complied with the mandates of Pa.R.A.P. 1925.

- 4 -

> petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.
>
> The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

***Commonwealth v. Franklin***, 990 A.2d 795, 797 (Pa. Super. 2010) (internal citations omitted).

**Issue One: Withdrawal of Guilty Plea**

Appellant's first issue concerns counsel's alleged ineffectiveness in relation to the withdrawal of her guilty plea. By way of background, in February 2015, Appellant initially agreed to plead guilty to third-degree murder in exchange for the Commonwealth's agreement to recommend capping her sentence to 6 to 12 years instead of 6 to 20 years. The sentencing court ordered the probation office to prepare a pre-sentence investigation (PSI) report, and the probation office complied by interviewing Appellant and preparing a report. At the March 16, 2015 sentencing hearing, the trial court announced it refused to accept the sentencing cap agreed upon by the Commonwealth and Appellant because, contrary to her guilty plea, Appellant made statements suggesting she was not accepting responsibility for her role in Rabins' death. Specifically, the PSI report stated that Appellant had said

I have a heart. I cared for [Rabins]. Of course I didn't kill her. It's not my fault she choked on a piece of cheese. That's crazy. Being charged for 3rd degree is outrageous. That's how I thought how can I take this plea deal? There are people taking plea deals and actually killed somebody.

PSI, February/March 2015, at 2b.

The sentencing hearing was continued so that Appellant could consider her options. On April 1, 2015, the trial court granted Appellant's motion to withdraw her guilty plea and the case was scheduled for trial.

Appellant now contends that her counsel rendered ineffective assistance to her by failing to advise her of the ramifications of going to trial with so many charges and the possibility of consecutive sentences if found guilty. Appellant's Brief at 25. Appellant claims she did not know she could maintain her plea, and says she would not have withdrawn her plea had she been so advised. *Id.* She also contends counsel should have objected to the court's refusal to abide by the plea agreement by filing a petition to enforce the guilty plea. *Id.*

Regarding the refusal to accept the plea agreement, the trial court has broad discretion to accept or reject a plea agreement, and there is "no absolute right to have a guilty plea accepted." *Commonwealth v. Hudson*, 820 A.2d 720, 727-28 (Pa. Super. 2003). "While the Commonwealth and a criminal defendant are free to enter into an arrangement that the parties deem fitting, the terms of a plea agreement are not binding upon the court. Rather the court may reject those terms if

- 6 -

the court believes the terms do not serve justice." ***Commonwealth v. White***, 787 A.2d 1088, 1091 (Pa. Super. 2001). Therefore, to the extent that Appellant claims her counsel was ineffective for failing to seek to enforce the sentence negotiated in the plea agreement, the court was within its discretion in rejecting the proposed sentence as not serving justice due to Appellant's failure to accept responsibility and expressed lack of remorse. Accordingly, such claim fails for lack of merit.

Appellant testified at the PCRA hearing that her counsel told her she had to go to trial, did not explain the possibility of consecutive sentences for multiple charges if the jury found her guilty, and did not tell her she could keep her guilty plea. N.T., 4/18/2019, at 57.

On the other hand, Appellant's counsel testified at the PCRA hearing that she and her co-counsel advised Appellant that withdrawing her plea and proceeding to trial was the best option because they believed Appellant had a chance to convince the jury that she acted in negligence, not malice. However, counsel also testified that they explained to Appellant the potential sentences she could receive and that they had "long discussions" about proceeding to sentencing or withdrawing the plea and proceeding to trial, and specifically whether Appellant "wanted to continue with the plea and the sentencing or whether she wanted to proceed to trial." ***Id.*** at 16-17.

Based on the PCRA court's holding that Appellant failed to prove that this claim had merit, it is clear that the PCRA court credited counsel's

testimony over Appellant's. PCRA Court Opinion, 7/22/2019, at 13. We are bound by the PCRA court's credibility determinations that are supported by the record. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). Furthermore, the PCRA court noted that Appellant's initial guilty plea colloquy contained an acknowledgement of her awareness that she was facing 40 years of incarceration in the aggregate and she had the opportunity to discuss the agreement with counsel. PCRA Court Opinion, 7/22/2019, at 13. Therefore, the PCRA court found that Appellant had elected to enter into a plea arrangement, knew the potential risks and benefits, and only changed her mind once the trial court removed the sentencing cap due to Appellant's refusal to accept responsibility for Rabins' death. ***Id.*** She elected to take her chances at trial, a decision she was given ample time to make due to the court's continuance of the hearing. ***Id.*** The PCRA court's analysis is free from legal error and supported by the record. Accordingly, because the underlying claim lacks merit, no relief is due on her first issue.[2]

---

[2] Nor is relief due on her second issue, which she combines with the first in her brief. Appellant frames the second issue as "whether the [PCRA] court erred as a matter of law and abused its discretion in failing to find counsel was ineffective in failing to [advise Appellant adequately] of potential ramifications of going to trial vs. plea arrangement[.]" ***Id.*** at 4 (unnecessary capitalization omitted). Her entire argument as to the second claim is simply a conclusory repeat of the issue without any analysis. ***Id.*** at 26 ("The trial court also erred as a matter of law and abused its discretion in failing to find counsel was ineffective in failing to [to advise Appellant adequately] of potential ramifications of going to trial versus plea

*(Footnote Continued Next Page)*

**Issue Five: Preparation of Client for Trial**

In her fifth issue, Appellant insists trial counsel was ineffective because counsel did not prepare Appellant adequately for trial. Appellant's Brief at 4. Her presentation of the argument is rather unfocused; she argues that counsel did not discuss her option to testify on her own behalf at trial, then morphs the issue into an argument that counsel did not advise her of the pros and cons of testifying, and then finally claims she would have testified if counsel had provided her with the necessary information and prepared her for trial. Appellant's Brief at 29-30.

Trial counsel testified at the PCRA hearing that the defense team met with Appellant for hours to discuss whether she should testify, and conducted mock trial questioning to prepare her for testifying. This is in

*(Footnote Continued)* ─────────────

arrangement."). This conclusory statement offers nothing to distinguish the issue from her first. To the extent Appellant is attempting to pose a separate issue, such issue is waived for failure to develop it. ***Commonwealth v. Sipps***, 225 A.3d 1110, 1116 (Pa. Super. 2019) (holding that a failure to cite to pertinent authority and develop a meaningful analysis renders an issue waived); ***see also*** Pa.R.A.P. 2119(a) (requiring an appellant to provide in argument section of brief "such discussion and citation of authorities as are deemed pertinent").

Similarly, Appellant's third and fourth issues are waived for failure to develop them. Appellant's third issue questions whether the PCRA court erred or abused its discretion in failing to conclude that counsel prepared inadequately for trial. Appellant's Brief at 4. Appellant does not develop any analysis of this issue beyond what she already presents in other issues. Appellant's fourth issue focuses on the ineffectiveness of counsel in failing to cross-examine witnesses adequately. Appellant's Brief at 4. However, Appellant does not specify the witnesses whom counsel cross-examined inadequately, let alone the ways in which the cross-examination was lacking. Accordingly, both her third and fourth issues are waived.

contrast to Appellant, who testified her counsel did not prepare her to testify at all or discuss the option to testify. The PCRA court deemed trial counsel's testimony to be credible. PCRA Court Opinion, 7/22/2019, at 19-20. "A PCRA court's credibility findings are to be accorded great deference," and, if the findings are supported by the record, they are binding upon a reviewing court. *Commonwealth v. Orlando*, 156 A.3d 1274, 1280 (Pa. Super. 2017) (citation omitted).

Based upon the testimony at the PCRA hearing and the PCRA court's credibility determinations, no relief is due on Appellant's fifth issue.

**Issue Six: Recusal**

In her sixth issue, Appellant argues counsel was ineffective for failing to request the recusal of the trial judge. According to Appellant, counsel should have made this request because the trial judge refused to abide by the sentencing cap in the plea agreement between Appellant and the Commonwealth and made a statement during sentencing that Rabins "basically went through torture." Appellant's Brief at 34. Appellant argues the trial court was prejudiced against her, as demonstrated by her extensive sentence and the trial court's "rulings during trial, [which] have been set forth herein and issues addressed in her original appeal."[3] *Id.*

---

[3] To the extent Appellant is attempting to incorporate argument by reference, this is not permitted by our appellate rules. *Commonwealth v. Briggs*, 12 A.3d 291, 342-43 (Pa. 2011); Pa.R.A.P. 2119(a), (b).

When assessing a PCRA claim that counsel was ineffective for failing to seek recusal of a trial judge, this Court has noted the following.

> The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion. … A jurist, when a motion for recusal is filed, must consider whether his or her involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary.

*Commonwealth v. Sarvey*, 199 A.3d 436, 454 (Pa. Super. 2018) (citations and quotation marks omitted).

As discussed *supra* in Appellant's first issue, the trial court stated it refused to accept the sentencing cap agreed upon by the Commonwealth and Appellant because, contrary to her guilty plea, Appellant made statements suggesting she was not accepting responsibility for her role in Rabins' death. The record supports the trial court's observation, and a motion to recuse based upon the trial court's rejection of the negotiated sentence cap would have had no merit. *See Commonwealth v. Blount*, 207 A.3d 925, 933-34 (Pa. Super. 2019) (holding that rejection of a negotiated sentence "does not require the conclusion that [a trial judge] was biased, prejudiced, or unfair such that [the judge] should have recused herself from th[e] matter"). Consequently, counsel was not ineffective for failing to seek recusal on this basis.

Appellant's second basis for recusal would not have fared better. The trial court made the comment about torture during the joint sentencing

hearing for the Tedescos while explaining why it had arrived at their sentences. Specifically, the trial court stated,

> on the surface, you have [Rabins] who has the mental capacity of a child; basically, someone who couldn't really take care of herself. … Someone who didn't have any adult functional capabilities but had trust moneys available every month to pay for her upkeep strikes me as someone who was wide open to be taken advantage of in various ways.

> ***

> [In 2010, Rabins] had [a] stroke. The Tedescos were used to [Rabins' money] coming in every month to maintain the [Tedescos'] new vehicles, the new house, the furniture, the clothing and the vacations, and now Rabins suddenly … has gotten into a situation where she needs 24-hour care. … She was signed out against [medical] advice [from the nursing home following her hospital stay]. My recollection from the trial is that [Rabins] didn't last very long outside of that nursing home situation. I think the same day she arrived at the home, that first nursing home contacted the Office of the Aging and had Office of the Aging personnel over there that very day who immediately -- and this isn't at the Tedesco house. This was down [at the apartment] in Saylorsburg with Tom Miller. [The Office of Aging] immediately recognized that this is way beyond the capability of the Tedescos to care for Rabins. They pulled her out of that apartment right away. She was there alone with Miller, as I recall. How she lasted as long as she did, I'll never know without … nursing care and supervision. She gets back in the hospital; she then went to the other nursing home. They eventually released her again, telling the Tedescos that she's got to … have full-time care. Again she winds up in the apartment in Saylorsburg. [I]t sounds to me that somehow Miller was keeping things going there plus the visits from John. I'm not sure when Miller moved out of that apartment. ... And from that point on, Rabins' existence had to be pure hell. She had nobody watching her while John was working. I didn't get the sense that at any time Appellant was there for her. Appellant was taking care of her home and her children, and nobody was thinking about Rabins except every month when the checks came in. And her condition was horrible. It was something that would cause anybody who encountered it to react with just basic - just like

when Office of the Aging walked into the house way back when they immediately took her out of there. Anybody who walked in there had to know this was bad. Your senses would tell you that; what you saw, what you smelled. **Rabins went through - she basically went through torture.** Anybody who saw her condition would know that she needed to be in a hospital immediately. I believe that John was aware of that. I don't know what Appellant was aware of other than she knew that Rabins wasn't being properly taken care of. The family was down in Wildwood on a vacation being paid for by Rabins' trust fund while Rabins was suffering alone in an apartment up in Pennsylvania.

N.T., 2/1/2016, at 23-27 (names altered; emphasis added).

In context, the trial court was simply summarizing the evidence and explaining why it was imposing the sentences. Given the evidence at trial about Rabins' condition, the trial court's description of Rabins' experience as torture was not unwarranted. We do not agree that the trial court's statement was a ground for recusal. *See Commonwealth v. Flor*, 998 A.2d 606, 642 (Pa. 2010) ("[I]t is not improper for a judge to address a defendant after sentencing for the purpose of reiterating to the defendant that the punishment just imposed was well-deserved."). Because the underlying claim lacks merit, Appellant cannot succeed on her claim of ineffective assistance of trial counsel for failure to seek recusal of the trial court judge. Accordingly, the PCRA court did not err in dismissing this claim.

**Issue Seven: Investigate Commonwealth Evidence**

In her seventh issue, Appellant argues that her trial counsel failed to investigate Commonwealth evidence that was available for inspection. At trial, defense counsel objected to documents introduced by the

Commonwealth, claiming that they were not provided during discovery. On appeal, this Court noted that the trial court determined that defense counsel was aware of the documents and had an opportunity to inspect them. The documents were listed on property records as "miscellaneous documents," but defense counsel failed to examine them. Defense counsel also failed to examine the contents of Rabins' purse, which contained an address book. Appellant's Brief at 35-37.

What is lacking from Appellant's argument is a demonstration of how these items prejudiced her such that there would have been a reasonable probability of a different outcome if counsel had inspected the records in advance of trial. The trial court provided defense counsel with an opportunity to examine the records at trial, and counsel did not object to them on an evidentiary basis. N.T., 8/7/2015, at 237-38. Appellant does not specify the contents or substance of the miscellaneous documents[4] or how the failure to inspect the documents in advance harmed her case. Therefore, the PCRA court did not err in dismissing this claim.

**Issue Eight: Commonwealth Closing**

In her eighth issue, Appellant argues trial counsel was ineffective because she did not object to the Commonwealth's closing argument, in

_____

[4] Based upon the pages of the transcript to which she refers us, in general Appellant appears to be referring to the admission of 16 pages of handwritten notes found in Rabins' apartment, miscellaneous documents found in the Tedescos' master bedroom, and miscellaneous documents found in Rabins' bedroom at the Tedescos' home. *Id.* at 132-59.

- 14 -

which the district attorney referred to entries in Rabins' address book that supported the Commonwealth's theory that Rabins did not live with the Tedescos. Appellant's Brief at 37-39. She contends this information likely led to her conviction. *Id.*

By way of background, the Commonwealth entered into evidence a purse and its contents that belonged to Rabins and was seized from the Tedescos' residence. N.T., 8/7/2015, at 160; Commonwealth Exhibit 41. A day planner was found inside the purse. The district attorney referred to the day planner during the Commonwealth's closing argument, emphasizing various entries in the calendar:

> June 23, 2008 – "John comes to visit." June 10, 2008 – "John comes to visit." June 23, 2008 – "John comes to visit, call Sharon [Leinwand, the trust administrator]. Tom comes home." July 27, 2009 - That was a Monday "[Appellant] and John are going on vacation." August 2, 2009 - "John and [Appellant] come home."
>
> You can take a look at all the months in the early part of 2008 and you will see John comes to visit. You will see an entry for when she moves to Pennsylvania in 2008. The entry of moving into Pennsylvania corresponds to the date on the lease at the [Route] 115 apartment. So what does all this mean? All of that stuff is that [] Leinwand who's played like a fiddle by the Tedescos is not true. [Rabins] stayed down there in Jersey [at the Route 115 apartment] with Tom Miller up until 2008. Her own entries verify that.

N.T., 8/14/2015, at 88-89.

The PCRA court offered the following analysis of Appellant's claim.

> [T]his evidence was offered to show that the Tedescos moved Rabins to Pennsylvania at a later time than they had told Leinwand, the trust officer who administered Rabins' trust funds.

- 15 -

Leinwand had testified that Appellant notified her by letter on May 3, 2006, that Rabins would be living with her 'in a mother-in-law suite' at the Tedesco home…. It was also used to show that Rabins lived at the Route 115 address [with Miller], not the Tedescos' address. Appellant argues that defense counsel should have objected to this evidence as evidence 'admitted during a closing argument.' However, the purse and its contents had been discussed during the trial, offered as evidence[,] and received by the court. *See* Commonwealth's Exhibit 41, N.T., 8/7/[20]15, at 160. Appellant further argues that this evidence should have been addressed by defense counsel during the trial. She is not specific as to the nature of the objection that should have been raised, or how the evidence should have been addressed by defense counsel.

The question of where the Tedescos kept Rabins - at their home … or in a first floor apartment on Route 115 in Saylorsburg [with Miller] - was the focus of the Commonwealth's case throughout the trial.

Trial Court Opinion, 7/22/2019 at 14-15 (names altered; some citations omitted).

The trial court then summarized all of the evidence introduced by the Commonwealth at trial to prove that the Tedescos kept Rabins at the apartment outside of their direct daily care instead of at their home, concluding that the planner entries highlighted by the Commonwealth in its closing were cumulative of other evidence. *See id.* at 14-19. In fact, the trial court described the "evidence … that Rabins was being kept by the Tedescos in the Route 115 apartment from 2008 forward, at first with Miller as a roommate, and finally, alone" as "overwhelming." *Id.* at 18 (names altered). Since the evidence referred to in the closing was merely cumulative to other overwhelming evidence admitted during the

- 16 -

Commonwealth's case-in-chief and showing the same thing, the trial court determined that Appellant failed to prove the last prong of the ineffective assistance of counsel analysis, prejudice. We agree. No relief is due.

**Issues Nine and Ten: Expert Witness**

In her ninth issue, Appellant argues that trial counsel rendered ineffective assistance of counsel by not having her defense expert in attendance at trial to aid in the cross-examination of the Commonwealth's expert witness, Sherri Blanchard-Doran. Appellant's Brief at 39-44. In her tenth issue, Appellant argues that trial counsel was ineffective because counsel did not investigate the Commonwealth's expert and appellate counsel did not include the issue of the expert in Appellant's brief on direct appeal. *Id.*

By way of background, Appellant presented an expert witness, William Manion, M.D., to rebut the Commonwealth's theory of homicide by neglect. During its case-in-chief, the Commonwealth presented the testimony of Sherri Blanchard-Doran, who was the director of nursing at Forest Manor, a long-term care nursing home where Rabins resided from June 30, 2010 to July 14, 2010, when the Tedescos signed her out against medical advice. As the trial court explains,

> Blanchard-Doran testified as a fact witness because she supervised Rabins' care in Forest Manor, and had discussions with the Tedescos about Rabins' care and about the Tedescos'[] demand to move her from the facility against medical advice.

Blanchard-Doran was then asked to comment on autopsy photographs to identify necrotic tissue, which drew a defense objection. The defense objected because Blanchard-Doran had not been named as an expert and had not been qualified to testify as one. [The trial court] permitted the Commonwealth to ask questions of *voir dire* to qualify her and [the trial court] permitted defense cross-examination of qualifications. [The trial court] allowed her to give expert testimony over defense objections.

Trial Court Opinion, 7/22/2019, at 22-23.

There is no merit to Appellant's claim that defense counsel should have had their defense expert present during the testimony of Blanchard-Doran for the simple reason that Blanchard-Doran was not identified as an expert in advance. Defense counsel cannot be expected to anticipate every trial strategy by the Commonwealth. Counsel objected to the testimony, but the objection was overruled.

Regarding Appellant's claim that defense counsel failed to investigate Blanchard-Doran, again, defense counsel had no reason to believe that this fact witness was going to testify as an expert. Furthermore, as the trial court points out, trial testimony indicates that a defense investigator did speak to Blanchard-Doran in advance of trial. Trial Court Opinion, 7/22/2019, at 25 (citing N.T., 8/7/2015, at 92).

Moreover, while Appellant argues that appellate counsel did not raise the issue of Blanchard-Doran's testifying as an expert on direct appeal, counsel did in fact raise this very issue. **See Tedesco**, **supra** (unreported memorandum at 5-6) ("Appellant asserts trial court error for allowing

Blanchard–Doran to testify as an expert witness because the Commonwealth failed to identify her as an expert witness, because no report was prepared, and because Appellant's expert was unable to view her testimony."). This Court has determined already that there was no merit to a challenge to Blanchard-Doran's testimony. *See id.* (holding that the trial court did not err by permitting Blanchard-Doran to testify as an expert because Blanchard-Doran had the requisite knowledge and skills "in geriatric nursing to discuss pressure ulcers and wounds … as they related to geriatric patients," "the Commonwealth did not violate any disclosure rules because the witness did not generate or introduce an expert report," and Appellant did not suffer prejudice because "the defense was on notice of the prosecution's intention to offer an expert in pressure ulcers, even if the expectation was that a different witness would offer that testimony").

Accordingly, since there is no merit to Appellant's claims, the trial court did not err in declining to find counsel to be ineffective.

**Issue Eleven: Renewal of Venue Objection**

In her eleventh and final issue, Appellant argues that trial counsel was ineffective in not renewing her petition for change of venue. Appellant's Brief at 44-50.

We use the following standard to evaluate requests for a change of venue.

> A change in venue is compelled whenever a trial court concludes
> a fair and impartial jury cannot be selected from the residents of

the county where the crime occurred. As a general rule, for a defendant to be entitled to a change of venue because of pretrial publicity, he or she must show that the publicity caused actual prejudice by preventing the empanelling of an impartial jury. The mere existence of pretrial publicity alone, however, does not constitute actual prejudice. Simply because prospective jurors may have heard about a case through media reports does not render them incapable of jury service.

\*\*\*

[T]he pivotal question in determining whether an impartial jury may be selected is not whether prospective jurors have knowledge of the crime being tried, or have even formed an initial opinion based on the news coverage they had been exposed to, but, rather, whether it is possible for those jurors to set aside their impressions or preliminary opinions and render a verdict solely based on the evidence presented to them at trial. Nevertheless, our Court has recognized that there are some instances in which pretrial publicity can be so pervasive and inflammatory a defendant does not have to prove actual prejudice. Prejudice will be presumed whenever a defendant demonstrates that the pretrial publicity: (1) was sensational, inflammatory, and slanted toward conviction, rather than factual and objective; (2) revealed the defendant's prior criminal record, if any, or referred to confessions, admissions or reenactments of the crime by the defendant; or (3) derived from official police or prosecutorial reports. However, if the defendant proves the existence of one or more of these circumstances, a change of venue will still not be compelled unless the defendant also demonstrates that the presumptively prejudicial pretrial publicity was so extensive, and pervasive that the community must be deemed to have been saturated with it, and that there was insufficient time between the publicity and the trial for any prejudice to have dissipated. With respect to the determination of whether there has been an adequate cooling off period to dissipate the effect of presumptively prejudicial media coverage ... [a] court must investigate what a panel of prospective jurors has said about its exposure to the publicity in question. This is one indication of whether the cooling period has been sufficient. Thus, in determining the efficacy of the cooling period, a court will consider the direct effects of publicity, something a defendant need not allege or prove.... Normally, what prospective jurors tell us about their ability to be impartial will be a reliable guide to whether the publicity is still so fresh in

their minds that it has removed their ability to be objective. The discretion of the trial judge is given wide latitude in this area.

***Commonwealth v. Bardo***, 105 A.3d 678, 712-14 (Pa. 2014) (citing

***Commonwealth v. Briggs***, 12 A.3d 291, 313-14 (Pa. 2011)).

In her brief, Appellant cites general law about requesting a change of venue before providing a one-paragraph analysis of the law as it applies to her case. Her analysis, in its entirety, is the following.

In this matter, there was tremendous pre-trial publicity. While there was a cooling-off period, the pre-trial publicity went rampant again, publicizing Appellant's guilty plea and subsequent withdrawal of the plea. This publicizing of [Appellant's] guilty plea is extremely prejudicial. Counsel for Appellant should have renewed the change of venue motion and same should have been granted.

Appellant's Brief at 49-50.

Appellant's analysis is woefully vague. It is her burden to prove her claim, ***see*** 42 Pa.C.S. § 9543(a)(2)(ii), but she fails to direct our attention to where in PCRA proceedings she set forth evidence proving that "pre-trial publicity went rampant again." ***See*** Pa.R.A.P. 2119(c) (requiring argument to set forth a reference to the place in the record where the matter referred to appears). Her analysis is conclusory without any meaningful discussion. Given Appellant's utter failure to attempt to develop her analysis, we find this issue to be waived.

Even if we were not inclined to find waiver, we would affirm the PCRA court's denial of this claim for the reasons stated by the PCRA court. The PCRA court points out that defense counsel's motion for a change in venue

was included in the omnibus pretrial motion argued in February 2014. The trial court denied the motion in June 2014, concluding that the publicity around the case had subsided and Appellant was free to conduct individual *voir dire* at the time of jury selection to renew her motion. Defense counsel did not renew the motion. However, during the PCRA process, Appellant does not point to any issues with a specific juror, and according to the PCRA court, the only news articles successfully introduced into evidence by Appellant were news reports that were from 2013, more than two years before jury selection. PCRA Court Opinion, 7/22/2019, at 29. Thus, Appellant has failed to plead and prove prejudice to her case.

Furthermore, trial counsel testified that she recalled only one article noting that Appellant had withdrawn her plea, and she did not renew the motion for change of venue because no juror stated they had formed an opinion about the case. N.T., 3/4/2019, at 32-37, 52. Because Appellant has failed to prove there was a reasonable probability of a different outcome if not for counsel's failure to re-file the motion for change in venue, **see Franklin**, 990 A.2d at 797, the trial court properly denied her claim that counsel was ineffective.

**Conclusion**

Based on the foregoing, we affirm the PCRA court's order dismissing Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/28/20